**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

SIG SAUER, INC.,
a foreign corporation,

    Plaintiff

v.

D & M HOLDING COMPANY, LLC, a
Florida limited liability company, DESIGN
& MANUFACTURING HOLDING COMPANY,
LLC, a Florida limited liability company, and
DANIEL L. POWERS, JR., an individual,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff SIG Sauer, Inc. ("SIG Sauer"), brings this complaint against Defendants, D & M Holding Company, LLC ("D & M") and Design & Manufacturing Holding Company, Inc. ("Design") (collectively "D & M Holding") and Daniel L. Powers, Jr. ("Powers") and in support states as follows:

### I.    PARTIES

1. SIG Sauer is a New Hampshire corporation with its principal place of business at 72 Pease Boulevard, Newington New Hampshire. As a result of its intensive investment in the vertical integration of its products, SIG Sauer is now a complete weapon systems provider, capable of supplying its global customers with a full array of products to meet any mission parameter, from handguns and rifles to silencers, optics, ammunition, air guns and accessories.

2. D & M is a limited liability company organized under the laws of Florida. Founded by Powers in 2002, D & M holds itself out as a global ammunition manufacturing equipment and services integration company with a place of business at 10312 County Road 579, Thonotosassa, Florida 33592.

3. Design is a corporation organized under the laws of Florida incorporated in July of 2018, with a place of business at 10312 County Road 579, Thonotosassa, Florida 33592. Upon information and belief, Design is engaged in the same business as D& M.

4. Powers is an individual who resides at 10312 County Road 579, Thonotosassa, Florida 33592.  Powers is the managing member of D & M and is the President and CEO of Design.  Upon information and belief, Powers is the sole member of D & M and the sole shareholder of Design.

## II.  JURISDICTION AND VENUE

5. This Court has personal jurisdiction over defendants as they do business in and/or reside in the State of Florida.

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a) as there is complete diversity between the plaintiff and the defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is appropriate in this District pursuant to 28 U.S.C. §1391(b).

### III. FACTS

8. In connection with its initiative to enter the high-end ammunition market and establish a viable ammunition business that protected SIG's brand and delivered product of the highest level of consistent quality, SIG Sauer engaged D & M, then located in Riverview, Florida, as a consultant in June of 2012 pursuant to a written Consulting Agreement. The initiative, as described in the Consulting Agreement, contemplated that after SIG Sauer began selling ammunition and developing its business, it would develop in-house manufacturing capability to capture margin and become competitive with established ammunition companies.

9. Powers, CEO of D & M, was hired by SIG Sauer as Director of SIG Sauer's Ammunition Division, effective January 1, 2013, and subsequently became President of SIG Sauer's Ammunition Division. As a consultant to SIG Sauer and as President of its Ammunition Division, Powers reported to Daryl G. Hanna ("Hanna"), Chief Strategy Officer and Executive Vice-President, Planning and Information Technology.

10. In January of 2014, SIG Sauer completed its move into its new corporate headquarters and state-of-the-art production facility in Newington, New Hampshire, which greatly expanded SIG Sauer's capacity to design, test, develop, manufacture and sell firearms.

11. In 2015, SIG Sauer expanded its business to include the design, testing, development, manufacture and sale of related products, including suppressors, optics, air guns, and ammunition.

12. SIG Sauer's entry into the ammunitions market began in a leased factory in Eubank, Kentucky in 2015, where its operations consisted of the assembly and packaging of ammunition, with sourced components and third-party loading. In May of 2016, SIG Sauer

announced its plans to relocate its Ammunition Division to Jacksonville, Arkansas by the end of 2016. Powers, President of the Ammunition Division, stated, SIG Sauer "[i]s committed to becoming a major player in the world-wide ammunition markets. Our advanced technology will allow SIG SAUER to design and develop world-class, precision-performance ammunition, and our new facility will ensure room for even more state-of-the-art equipment, and a much larger ballistics test lab to facilitate our manufacturing and R & D processes."

13. From May 2016 through March 17, 2017, a team of SIG Sauer engineers worked closely with Nabholz, a regional construction and engineering firm, pursuant to a Non-Disclosure Agreement with Nabholz, to renovate an existing building to establish a state-of-the-art facility in Jacksonville, Arkansas. The facility was designed to permit SIG Sauer to create a manufacturing environment that allowed the vertical integration of its ammunition business from shell case manufacturing, to the design and manufacture of loading machines, and to the design and manufacture of projectiles and primers, and in-sourcing the design, testing and production of all component parts. SIG Sauer invested millions of dollars and substantial time in designing and constructing its new facility and in designing and engineering the equipment, technology, and processes to be utilized in its new facility.

14. On March 17, 2017, SIG Sauer consolidated its ammunition production in the new facility in Jacksonville, Arkansas, which now has full metrology, metallurgical and energetic materials laboratories, in-house tool making, in-process quality monitoring and automated SPC, and complete in-house production capability for all small arms caliber ammunition for .380 auto to .338 magnum.

15. As its global ammunition sales increased and in anticipation of the opening of its new facility, SIG Sauer hired additional personnel for its Ammunition Division, including but not limited to Jay Durham ("Durham"), Donald Pile ("Pile"), and George Wallace ("Wallace"), who joined SIG Sauer on or about December 27, 2016, December 12, 2016, and May 8, 2017, respectively. SIG Sauer also hired B.J. Rogers ("Rogers") in May of 2015, Les Powell in October of 2016, and Chris Tauriello in May of 2015.

16. Durham, Wallace and Pile were each asked to sign a Confidential Information, Non-Solicitation, Non-Competition, Invention Assignment and Arbitration Agreement ("the Agreement") prior to beginning their employment with SIG Sauer, and each executed the Agreement, which explicitly acknowledged that each would have access to SIG Sauer's Confidential Information as defined in the Agreement regarding the "Business of the Company." The "Business of the Company" was defined to mean "the design, testing, development, manufacture, sales, and or marketing of firearms…and related products including but not limited to electro-optics, ammunition, air guns, and accessories…"

17. Powell and Rogers, and upon information and belief, Tauriello, also executed Confidential Information, Non-Solicitation, Invention Assignment and Arbitration Agreements ("Confidentiality Agreements") with SIG Sauer, pursuant to which they agreed not to use or disclose SIG Sauer's Confidential Information as defined in their Agreements except as necessary in the ordinary course of their employment by SIG Sauer.

18. Durham, Wallace and Pile each further agreed that for a period of one year following the termination of his employment, he would not, "*directly or indirectly*,… contract with, be an agent of, consult with, invest in, advise or have any other involvement in any

business… that it is competitive with any aspect of the 'Business of the Company,' anywhere in the United States." Powers, as President of SIG Sauer's Ammunition Division at the time Durham, Pile, and Wallace were employed, had actual or constructive knowledge of each of their Agreements. Powers, as President of SIG Sauer's Ammunition Division at the time Powell, Rogers and Tauriello were employed, had actual or constructive knowledge of each of their Agreements. Each of these employees, including Powers, acknowledged receipt of SIG Sauer's Employee Handbook, which also prohibited the use or disclosure of SIG Sauer's confidential business information and trade secrets.

19. Powers' employment as President of SIG Sauer's Ammunition Division, terminated in September of 2017 after being confronted with evidence that D & M had been soliciting bids for ammunition loading equipment and factory layout for D & M, potentially in competition with SIG Sauer.

20. SIG Sauer continued development and expansion of its ammunition business at its Arkansas facility, including the improvement of the manufacturing technology and processes for shell cases, projectiles, and primers, and the technology and processes for the loading machines designed and built by SIG Sauer.

21. As employees of SIG Sauer, Durham, Pile and Wallace individually and collectively, as well as Powell, Rogers and Tauriello, were intimately involved in the design, development, testing, manufacture, and/or marketing of shell cases, loading machines, projectiles and primers integral to SIG Sauer's ammunition business and had access to SIG Sauer's unique and proprietary technologies that had been, and were continuing to be, developed and utilized by SIG Sauer in its Arkansas facility.

22. During their employment by SIG Sauer, Durham, Pile and Wallace, as well as Powell, Rogers and Tauriello, had unfettered access from their password-protected SIG Sauer laptops to Sig Sauer's Confidential Information including, inventory part drawings, product work-in-progress and progress prints/quality documents and drawings and call-outs and specifications, gauge and other technical data (to include process documentation, standard operating procedures, dimensions, material call outs, gauge and fixture information, and tooling information) stored on SIG Sauer's Product Lifecycle Management system ("Agile"), on its Enterprise Resource Management system (Oracle) and on its shared network file system.

23. SIG Sauer's Confidential Information included the specific use of ammunition manufacturing processes (cold forming, induction annealing, induction bonding, fine blanking, stamping, transfer press processes, head turn, automatic lathe, washes, annealing, vibratory polishing, heat treating, hydraulic pressing, rotary automated priming, and plate and rotary automated loading), and the use of ammunition equipment (National FORMAX cold headers; Bliss and Waterbury Farrel cold headers; Cincinnati Milacron Extrusion equipment; Bliss draw and assembly transfer presses; Asahi-Seiki, US Baird, and Waterbury Farrel transfer presses; V&O Rotary Presses, Bitterroot and Vasini priming machines; Bitterroot and Vasini loading equipment; Saginaw Machine Systems Brut head turn lathes; Traub lathes; Multipress hydraulic presses, Vasini Cartridge Waterproofing equipment; and General Inspection QA equipment.

24. More specifically, Durham, Pile and Wallace, as well as Powell, Rogers and Tauriello, had access to Confidential Information regarding SIG Sauer's unique and proprietary processes that result in SIG Sauer specific features, qualities or benefits, including

shell cases and shell case manufacturing processes resulting in superior metallurgical properties enabling multiple reloads, no primer drops or leaks, no mouth burrs, with higher dimensional accuracy (concentricity and diametric consistency and centered flash hole); hybrid shell manufacturing processes enabling multi-piece ammunition shell-cases able to withstand higher pressures than conventional brass-only shell cases; priming, plate loading and machine loading processes optimized for full-size and concealed carry striker pistols and compatible with hammer fired pistols while keeping point-of-aim/point-of-impact identically matched across full-metal and jacketed hollow point bullet types, clean burning, and accurate; and projectiles and projectile manufacturing including jacketed hollow-point bullet technology to generate superior expansion and terminal ballistics.

25. In addition to the Confidential Information regarding SIG Sauer's engineering, testing and manufacturing technologies and processes developed by SIG Sauer to which Durham, Pile and Wallace, as well as Powell, Rogers and Tauriello have had access during their employment, each of them has also been in a position to develop good will with the suppliers with whom SIG Sauer has dealt during the last five years to build and develop its in-house manufacturing capability, as well as the suppliers of components and raw materials, as SIG Sauer has expended millions of dollars on the purchase of materials and equipment from these suppliers.  The identity of SIG Sauer's suppliers, the type of material purchased and the cost of the material supplied are not only protected as "Confidential Information" under the Non-Disclosure provisions of the Agreements, but the relationships Durham, Pile and Wallace have established with suppliers on behalf of SIG Sauer are protected as "good will with third parties" under the Non-Competition provisions of their Agreements

26. In December 2020, Durham, Pile and Wallace each resigned his position with SIG Sauer, and in violation of the Non-Competition Covenant in their Agreements, has been, or will become employed by Design. Each was sent a cease and desist letter on December 22, 2020, with a copy of his Agreement. Copies of these letters are attached as Exhibits A through C. Powell, Rogers and Tauriello also informed SIG Sauer of their intent to leave SIG Sauer and go to work for one or more of the Defendants.

27. Powers also was sent a letter on December 22, 2020, putting him on actual notice of Durham's, Pile's and Wallace's Agreements. See copy attached as Exhibit D. On December 28, 2020, Powers advised SIG Sauer that he had forwarded the letter to him, and the cease and desist letters to Durham, Pile and Wallace, to "*our* attorney for review and response." (emphasis added).  Contrary to the clear language in the former employees' Agreements, Defendants have taken the position that Durham, Pile and Wallace "[a]re not precluded from working for D & M and D & M is not prohibited from hiring such employees."

28. SIG Sauer filed suit against Durham, Pile and Wallace in the Rockingham County Superior Court in Brentwood, NH, and they were ordered to appear for a hearing on January 25, 2021 on SIG Sauer's request for preliminary injunctive relief seeking, *inter alia*, to enjoin the use or disclosure of SIG Sauer's Confidential Information, including its trade secrets, for the benefit of D & M Holdings LLC and/or Powers in breach of their Agreements with SIG Sauer. Durham, Pile and Wallace filed an Expedited Motion to Continue the January 25, 2021 Hearing, which was granted by the Court.

29. A preliminary review of the new SIG Sauer laptops issued to Durham, Pile, Wallace and Tauriello in August and/or September of 2020 evidences that Tauriello, Pile and

9

Wallace accessed folders and files on multiple occasions beginning in October and continuing through December 22, 2020, and apparently copied them to external USB hard or flash drives. It appears that Tauriello, who was SIG Sauer's Director of Supply Chain & Planning, copied the entirety of his work product on the external devices, including data related to sales transactions (customers, quantities, and prices), production details (volume, forecast and capability), customers, materials planning including finished goods, contact, and bids, as well as Outlook files containing business-related communications with attached files. The laptops of Wallace, who was SIG Sauer's Senior Director of Engineering, and Pile, who was SIG Sauer's Principal Chemist, both had a significant amount of SIG Sauer's confidential and proprietary data, including but not limited to CAD design, drawings, models for tooling and fixtures for ammunition production machines, on them when they were turned into SIG Sauer after Wallace and Pile left, and each laptop had evidence of USB connections shortly before they announced their departure. Logs maintained by SIG Sauer in 2020 shows extensive use of external devices with SIG Sauer data by both Wallace and Pike on the laptops they used prior to the issuance of new laptops. The information accessed by Tauriello, Pile and Wallace constitutes "Confidential Information" under their respective Agreements, and/or trade secrets under Arkansas Code Annotated §§4-75-601 *et seq* .and/or Fla. Stat. §§688.02.

## COUNT I
## TORTIOUS INTERFERENCE WITH CONTRACT

30. SIG Sauer realleges and incorporates paragraphs 1 through 27 above.

31. SIG Sauer had a business relationship with Durham, Pile, and Wallace, as evidenced by the Agreements each signed prior to their employment by SIG Sauer.

32. Defendants D & M, Design and Powers had, at all times pertinent to this Complaint, actual and/or constructive knowledge of the Agreements that SIG Sauer had with Durham, Pile and Wallace which prohibited the use or disclosure of SIG Sauer's "Confidential Information," including its trade secrets.

33. SIG Sauer has a legitimate interest in protecting its trade secrets and its confidential information communicated to its employees during the course of their employment.

34. Defendants D & M, Design, and/or Powers intentionally and without justification interfered with SIG Sauer's contractual relationship with Durham, Pile and Wallace by inducing each of them to breach their Agreements with SIG Sauer in order to obtain access to SIG Sauer's confidential and proprietary technology and processes and to unlawfully appropriate the confidential and proprietary information for their individual or collective benefit.

35. SIG Sauer has been damaged by Defendants' unlawful interference through the loss or threatened loss of its Confidential Information and trade secrets, and the loss or threatened loss of its good will with its suppliers.

WHEREFORE, SIG Sauer respectfully requests this Court:

A. Enter judgment in its favor on all Counts of this Complaint;

B. Award SIG Sauer its damages, including reasonable attorneys' fees and costs; and

C. Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Sig Sauer demands a trial by jury on all issues so triable.

Respectfully submitted this 26th day of January, 2021.

       **JACKSON LEWIS P.C.**

       */s/ Laura E. Prather*
       LAURA E. PRATHER, B.C.S.
       Florida Bar No.: 870854
       laura.prather@jacksonlewis.com
       Wells Fargo Center
       100 South Ashley Drive, Suite 2200
       Tampa, Florida 33602
       Telephone: (813) 512-3210
       Facsimile: (813) 512-3211


       */s/ Kyle B. Russell*
       Kyle B. Russell
       Kansas Bar No.: 20457
       *Motion for Pro Hac Vice to be Filed*
       Kyle.Russell@jacksonlewis.com
       7101 College Blvd., Suite 1200
       Overland Park, KS 66210
       (913) 982-5755

       Attorneys for Sig Sauer, Inc.