UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:21-CV-00194-KKM-SPF

SIG SAUER, INC.,
a foreign corporation,

        Plaintiff,

  v.

D&M HOLDING COMPANY, LLC, a Florida limited liability company, DESIGN & MANUFACTURING HOLDING COMPANY, LLC, a Florida limited liability company, and DANIEL L. POWERS, JR., an individual,

        Defendants.

## DEFENDANTS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM IN SUPPORT

**PISCIOTTI LALLIS ERDREICH**
30 Columbia Turnpike, Suite 205
Florham Park, New Jersey 07932
Telephone:  (973) 245-8100
Facsimile:   (973) 245-8101

*Attorneys for Defendants*

Defendants D&M Holding Company, LLC ("D&M LLC"), Design & Manufacturing Holding Company, Inc. d/b/a D&M Holding Company, Inc., i/p/a Design & Manufacturing Holding Company, LLC ("D&M Inc."), and Daniel L. Powers, Jr. ("Mr. Powers"), (collectively, "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), hereby file this Motion to Dismiss Plaintiff Sig Sauer, Inc.'s ("Sig" or "Plaintiff") Complaint.

## PRELIMINARY STATEMENT

Plaintiff brings a single count, tortious interference with contract claim, against Defendants stemming from the hiring of three former Sig employees, Jay Durham, Donald Pile, and George Wallace (collectively referred to herein as "the employees"). Plaintiff claims the employees were induced to breach non-disclosure and non-compete agreements by accepting an offer of employment with D&M Inc.[1] The Complaint asserts that the employees may be in possession of certain confidential information but does not assert that the employees provided any such information to Defendants or are improperly using the confidential information.

Plaintiff has failed to assert, and cannot establish, multiple required elements of its tortious interference claim. Under Florida law, which is applicable to this claim, a defendant cannot be held liable for tortious interference as a matter of law for merely extending an offer of employment to employees who may have been subject to a non-compete agreement. For such a claim, Plaintiff must show that the interference was done for some improper purpose with the specific intent to cause a breach of agreement. Here, there is no assertion that Defendants' alleged interference was done intentionally or for an improper purpose. Instead, all that is alleged is that D&M Inc. hired the employees who were subject to non-compete agreements and had confidential information. This is insufficient as a matter of law. Moreover, to establish a tortious interference claim, Plaintiff must show actual non-speculative damages as opposed to possible future damages. Here, Plaintiff has not asserted any damages. Indeed, there is no claim of misuse of confidential information or any resulting damages.

---

[1] The employees are employed by D&M Inc. D&M LLC is a shareholder of D&M Inc. and played no role in any of the events outlined in the Complaint.

1

Finally, to establish an individual claim against Mr. Powers, the President and CEO of D&M Inc., his actions must be outside of the scope of his employment and/or for personal gain. Neither element is claimed here. Accordingly, Plaintiff has failed to plead the necessary elements of its tortious interference claim, and the Complaint should be dismissed in its entirety with prejudice.

## FACTUAL BACKGROUND

### I. OPERATIVE FACTS IN THE COMPLAINT.[2]

Plaintiff Sig is a New Hampshire corporation that is a "complete weapon systems provider," including firearms, silencers, optics, ammunition, air guns, and accessories. (Dkt. No. 1, Complaint, at ¶ 1.) D&M LLC is a Florida limited liability company, D&M Inc. is a Florida corporation, and Mr. Powers is a Florida resident who is the managing member of D&M LLC and the President and CEO of D&M Inc. (*Id.* at ¶¶ 2-4.)

In June of 2012, Sig entered into a consulting agreement with D&M Inc. to "develop in-house [ammunition] manufacturing capabilities." (*Id.* at ¶ 8.) In January of 2013, Sig hired Mr. Powers as President of Sig's ammunition division. (*Id.* at ¶ 9.) In March of 2017, after developing its ammunition production facility under Mr. Powers, Sig "consolidated" its ammunition production at a new facility in Jacksonville, Arkansas. (*Id.* at ¶¶ 13-14.) On December 12, 2016, December 27, 2016, and May 8, 2017, respectively, Sig hired Donald Pile, Jay Durham and George Wallace. Each employee signed a Confidential Information, Non-Solicitation, Non-Competition, Invention Assignment and Arbitration Agreement ("Non-Compete Agreement") with Sig upon hire. (*Id.* ¶ 16.) The Non-Compete Agreement prevented the improper disclosure of Sig's confidential information and seeks to prevent the employees for one (1) year post employment from:

---

[2] Defendants do not admit the allegations in the Complaint but accept them as true only for purposes of this Motion only.

> be[ing]employed by, own[ing], manag[ing], operat[ing], contract[ing] with be[ing] an agent of, consult[ing] with, invest[ing] in, advis[ing], or having any other involvement in any business company, entity, or association that is competitive with any aspect of the Business of the Company, anywhere in the United States.

(Dkt No. 1-1, Non-Compete Agreement, ¶ 6.)[3] Despite the employees only working in Sig's ammunition division, Sig broadly defined the Business of the Company to cover nearly all aspects of "weapon systems":

> "Business of the Company" shall mean the design, testing, development, manufacture, sales and/or marketing of firearms as defined by 18 USC 921 (a)(3) and related products including but not limited to electro-optics, ammunition, airguns and accessories, along with any other products that the Company designs, tests, develops, manufactures, sells and/or markets in the future.

(*Id.*)

Mr. Pile was employed by Sig as an ammunition chemist for approximately four (4) years. (*See* Ex. A, Verified Complaint for Preliminary Injunction, State of New Hampshire Superior Court, Docket No. 218-2021-CV-00018, hereafter "NH Complaint," ¶ 3.)[4] Prior to his employment with Plaintiff, Mr. Pile worked for Remington Arms as a chemist for about eighteen (18) years. (*See* Ex. B, Answer to Verified Complaint for Preliminary Injunction, State of New Hampshire Superior Court, Docket No. 218-2021-CV-00018, hereafter "NH Answer," ¶ 3.) Mr. Durham was employed by Sig as the manager of ammunition component manufacturing. (*See* NH Complaint, ¶ 2). Prior to his employment with Plaintiff, Mr. Durham worked for Remington Arms for about thirteen (13) years. (*See* NH Answer, ¶ 2.) Mr. Wallace was employed by Sig as an ammunition manufacturing/equipment engineer. (*See* Ex. A, NH Complaint, ¶ 4.) Prior to his

---

[3] The Court may consider any exhibit attached to the pleadings on a Rule 12(b)(6) motion to dismiss. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.") (quoting Fed. R. Civ. P. 7(a) and 10(c)).

[4] The Court may consider pleadings from other actions on a Rule 12(b)(6) motion to dismiss without converting the motion to one for summary judgment. *Jackson v. U.S. Bank, N.A.*, 44 F. Supp. 3d 1210, 1215 n.1 (S.D. Fla. 2014) (citing *Cooks v. Walmart Stores*, No. 2:13–cv–526, 2013 WL 5350661, at *1 n. 1, 2013 U.S. Dist. LEXIS 135502, at *2 n. 1 (N.D. Ala. Sept. 23, 2013), and stating that "ample authority exists which recognizes that matters of public record, including court records in related or underlying cases which have a direct relation to the matters at issue, may be looked to when ruling on a 12(b)(6) motion to dismiss.").

employment with Plaintiff, Mr. Wallace worked for Remington Arms for about twenty-two (22) years.  (*See* Ex. B, NH Answer, ¶ 4).

According to the Complaint, Mr. Pile, Mr. Durham, and Mr. Wallace were "involved in the design, development, testing, manufacture, and/or marketing of shell cases, loading machines, projectiles and primers integral to SIG Sauer's ammunition business." (Dkt. No. 1, Complaint, at ¶ 21.)  They had access to Sig's proprietary technologies, including drawings, technical data, equipment, suppliers, and manufacturing processes. (*Id.* at ¶¶ 21-25.)

Mr. Powers remained the President of SIG Sauer's ammunition division until September of 2017. (Dkt. No. 1, Complaint, at ¶ 19.)  It is alleged that, between August and December of 2020, Mr. Pile, Mr. Durham, and Mr. Wallace "accessed folders and files" on their Sig computers and "*apparently* copied them to external USB hard or flash drives." (Dkt. No. 1, Complaint, ¶ 29 (emphasis added).)  The computers allegedly contained various confidential information. (*Id.*) In December of 2020, Mr. Pile, Mr. Durham and Mr. Wallace resigned their positions at Sig an accepted employment with D&M, Inc. (*Id.* ¶ 26.)

Sig subsequently placed the employees and D&M Inc. on notice of the alleged violation of the Non-Compete Agreements. (*Id.* at ¶¶ 26-27.) In response, Defendants advised that D&M Inc. is a logistics company and is not in the "Business of the Company" as defined by Sig since it does not design, test, develop, manufacture, sell or market firearms, electro-optics, ammunition, airguns and accessories. (*Id.* ¶ 27; *see also* Ex. A, Exhibit I to NH Complaint, and ¶ 28.)  As a result, Defendants claim that Mr. Durham, Mr. Pile and Mr. Wallace "[a]re not precluded from working for D&M and D&M is not prohibited from hiring such employees." (*Ibid.*)

## II. PLAINTIFF'S TORTIOUS INTERFERENCE CAUSE OF ACTION

In bringing this lawsuit, Plaintiff alleges, as to all Defendants, a single count of tortious interference with contracts.  (*Id.* ¶¶ 30-35.) Sig alleges that Defendants had actual and constructive

4

knowledge of the employees' Non-Compete Agreements and interfered with the contractual relationship with the employees by inducing them to breach their agreements and appropriate confidential information. (*Id.* ¶¶ 32, 34.) It is neither claimed nor alleged that the employees provided any confidential information to Defendants or improperly using any such confidential information. (*See generally* Dkt. No. 1., Complaint.) Sig also failed to claim any specific damages stemming from the alleged breach of the Non-Compete Agreements. (*Id.*)

### III. ATTEMPTED ENFORCEMENT OF THE NON-COMPETE AND NON-DISCLOSURE AGREEMENTS IN NEW HAMPSHIRE STATE COURT

On or about January 6, 2021, Plaintiff filed a Verified Complaint for Preliminary Injunction in the State of New Hampshire Superior Court, Rockingham County, requesting a preliminary injunction enjoining Mr. Durham, Mr. Pile, and Mr. Wallace from their gainful employment with D&M Inc. (*See* Ex. A, NH Complaint.) An Answer to Verified Complaint for Preliminary Injunction was filed on behalf of Mr. Durham, Mr. Pile, and Mr. Wallace on or about February 5, 2021. (*See* Ex. B, NH Answer.) On February 8, 2021, the Court held a hearing on Plaintiff's complaint for preliminary injunction, which was halted due to time limitations. (*See* Ex. C, February 8, 2021 Order On Scheduling and Discovery.) The hearing is scheduled to resume on March 10, 2021, and the parties are permitted to conduct discovery in the interim. (*Id.*) As of the filing of this motion, no preliminary injunction has been granted.

## ARGUMENT

Plaintiff's lawsuit should be dismissed pursuant to Rule 12(b)(6) for failing to state a claim upon which relief may be granted.

### I. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED PURSUANT TO RULE 12(B)(6)

#### A. Standard

In order to state a claim, Rule 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion

to dismiss, a Court must accept all well-pleaded allegations as true. *Histhon v. King & Spalding*, 467 U.S. 69, 73 (1984).  A Court need not, however, accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [him]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).  "Th[e] Court need not accept facts that are internally inconsistent, facts that run counter to facts which the court may take judicial notice of, conclusory allegations, unwarranted deductions, or mere legal conclusions." *United States ex rel. Nicholas v. JFK Med. Ctr.*, 2002 U.S. Dist. LEXIS 28169, at *5-6 (S.D. Fla. Nov. 18, 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.*  "[A] plaintiff's obligation to prove the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Stillwell v. Allstate Insurance Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011).  Thus, a complaint cannot survive a Rule 12(b)(6) motion to dismiss when there is no construction of the factual allegations that can plausibly state a cause of action entitling the plaintiff to relief. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171,1174 (11th Cir. 1993).

### B. <u>Argument</u>

Plaintiff's Complaint should be dismissed because all four elements of the cause of action for tortious interference with contracts must be shown to establish a prima facie case, and Plaintiff has not adequately pled, and is unable to show, intentional and unjustified interference with the Non-Compete Agreement or damages as a matter of law.  Further, Mr. Powers cannot be held individually liable for his corporate actions of hiring the subject employees for D&M Inc.

1. **PLAINTIFF'S SOLE CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTS SHOULD BE DISMISSED BECAUSE SUCH A CAUSE OF ACTION CANNOT SURVIVE WITHOUT ESTABLISHING A PRIMA FACIE SHOWING OF ALL FOUR ELEMENTS**

    a. **Plaintiff has Not Adequately Pled and Cannot Establish Intentional and Unjustified Interference for the Employees' Alleged Breach of the Non-Compete Agreements.**

All four elements of a claim for tortious interference with a contractual or business relationship under Florida law are required to show a prima facie case: "(1) the existence of a [contract or] business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff." *Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir.2001) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla.1994)).[5] The alleged interference must be both direct and intentional. *Hager v. Venice Hosp., Inc.*, 944 F. Supp. 1530, 1535 (M.D. Fla. 1996).

To be liable for tortious interference a defendant must have both "the intent to damage the business relationship and a lack of justification for doing so." *AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.,* 391 F. Supp. 2d 1148, 1165 (S.D. Fla. 2005); *see also NetworkIP, LLC v. Spread Enters., Inc.,* 922 So. 2d 355, 358 (Fla. 3d DCA 2006). Only direct and unjustified interference is actionable. *Rosenbaum v. Becker & Poliakoff, P.A.*, 2010 WL 376309, at * 5 (S.D. Fla. Jan. 26, 2010). So long as the company does not engage in improper conduct, it may take steps to protect its business interests without liability for tortious interference. *NetworkIP*, 922 So. 2d at 358; *Ethyl*

---

[5] The laws of the States of Florida, New Hampshire, and Arkansas apply the same test for tortious interference, and thus there is no true conflict of law. Nevertheless, applying the choice-of-law principles of Florida, as the forum state in this diversity action (*Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007)), Florida has the "most significant relationship" to this tort action. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). Florida is the state of residence of the Defendants and where the alleged tortious interference took place. *See Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980).

7

*Corp. v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980); *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1321 (11th Cir. 1998) ("Florida law recognizes the principle that actions taken to safeguard or protect one's financial interest, so long as improper means are not employed, are privileged."); *Metzler v. Bear Automotive Serv. Equip. Co., SPX*, 19 F. Supp. 2d 1345, 1364 (S.D. Fla. 1998) ("Lawful competitive practices are privileged under Florida tortious interference law. As long as no improper means are employed, business activities taken to safeguard or promote one's own financial interests are not actionable."). Improper means include physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct, and threats of illegal conduct. *G.M. Brod & Co., Inc. v. U.S. Home Corp.*, 759 F.2d 1526, 1533-36 (11th Cir. 1985); *Morsani v. Major League Baseball*, 663 So.2d 653, 655-57 (Fla. 2d DCA 1995).

Merely entering into an employment agreement knowing that the employee could not honor his covenant not to compete with a third party is not a proper basis for tortious interference. *Fiberglass Coatings, Inc. v. Interstate Chem., Inc.*, 16 So.3d 836, 837-39 (Fla. 2d DCA 2009). Knowledge of the existence of a contract alone is insufficient to show intent to interfere. Under Florida law, "[o]ne does not induce another to commit a breach of contract with a third person . . . when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person." *Martin Petroleum Corp. v. Amerada Hess Corp.*, 769 So.2d 1105, 1107 (Fla. 4th DCA 2000) (quoting Restatement (Second) of Torts § 766 cmt. n. (1977)).  The law in Florida is clear that there is "no such thing as a cause of action for interference with a contractual or advantageous business relationship which is only negligently or consequentially effected." *Fla. Power & Light Co. v. Fleitas*, 488 So.2d 148, 151 (Fla. 3d DCA 1986).

Instead, the plaintiff must show a specific and improper intent to interfere and cause a breach. *Mortgage Now, Inc. v. Guaranteed Home Mortg. Co., Inc.*, 545 Fed. Appx. 809, 811 (11th

8

Cir. 2013) (citing *Fiberglass Coatings, Inc.*, 16 So.3d at 837-39). Causation requires the plaintiff to prove that a defendant manifested a **specific intent** to interfere with the business relationship. "No liability will attach unless it is established that the defendant intended to procure a breach of the contract." *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So.2d 810, 814 (Fla. 2d DCA 2002) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla.1985)). A new employer's mere knowledge of an employee's non-disclosure agreement is insufficient to show causation. *Fiberglass Coatings, Inc. v. Interstate Chem., Inc.*, 16 So. 3d 836, 838 (Fla. Dist. Ct. App. 2009).

Finally, a party's "predisposition to breach . . . precludes any finding that [it] was induced to breach by [a third party]." *Farah v. Canada*, 740 So.2d 560, 562 (Fla. 5th DCA 1999). A predisposition to breach supersedes even if a plaintiff can prove the requisite level of intent on the part of a defendant. *Ingenuity, Inc. v. Linshell Innovations Ltd.*, 644 F. App'x 913 (11th Cir. 2016).

Here, Plaintiff has not alleged specific and improper actions by Defendants to cause the employees to breach their Non-Compete Agreements. All that is asserted is that Defendants knew of the agreements and hired the employees anyway. There are no allegations that Defendants knew the employees possessed any confidential information, hired them for such confidential information, and/or improperly used Sig's confidential information. Plaintiff's allegations are insufficient to establish the required element of "intentional and unjustified interference" with a contract and Plaintiff cannot establish this element through the mere hiring of an employee that has alleged non-compete obligations. Moreover, the tortious interference claim is improper in this instance given the predisposition of the employees to violate the Non-Compete Agreements if they were to seek nearly any other employment in their given ammunition production fields.[6]

---

[6] The Non-Compete Agreements seek to prevent the employees from working for any competitor of Sig, anywhere in the U.S. in the "design, testing, development, manufacture, sales and/or marketing" of firearms[,]…electro-optics,

9

### b. Plaintiff has not Pled and Cannot Establish Damages.

As to damages, under Florida law, a showing of actual damages is necessary. "Mere speculative hope" that prior customers will continue to avail themselves of a plaintiff's business is not a proper basis for tortious interference. *See Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc.*, 262 F.3d 1152, 155 (11th Cir. 2001). Future damages or prospective damages are insufficient to meet the necessary fourth element of a tortious interference claim; proof of actual damages is required. *See AlphaMed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F.Supp.2d 1319, 1352 (S.D.Fla.2006). The asserted injuries must be "neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

Florida law does not permit recovery of nominal damages for tortious interference. *Imperial Majesty Cruise Line, LLC v. Weitnauer Duty Free, Inc.*, 987 So. 2d 706, 708 (Fla. 4th DCA 2008). A plaintiff must prove its entitlement to the measure of the damages sought. *AlphaMed Pharm. Corp.* at 1352. It must be ascertainable with reasonable certainty that the damages were legally caused by the tortious interference. *JMA, Inc. v. Biotronik SE & Co. KG.*, No. 12-CV-23466, 2014 WL 12838935, at *1 (S.D. Fla. Nov. 24, 2014). Absent actual harm, a plaintiff's tortious interference claim cannot be sustained. *AT&T Mobility, LLC v. Digital Antenna, Inc.*, No. 09-60639-CIV, 2010 WL 11506068, at *20 (S.D. Fla. Feb. 9, 2010).

Here, Plaintiff has not pled any specific damages. The Complaint fails to assert that any confidential information is being improperly used and/or that any damages have occurred as a result of the employees allegedly having Sig's confidential information. The Complaint also fails to assert any damages stemming from the alleged violation of the Non-Compete Agreements.

---

ammunition, airguns and accessories." Other than D&M, Inc., which as a logistics company, and does not fall within this definition, the preclusive language, in essence, attempts to prevent the employees from working in their given industry or similar industries for anyone other than Sig. It is Defendants' position that the Non-Compete Agreements are unenforceable and void as a matter of law. These agreements are subject to the laws of New Hampshire, and the possible adjudication of the enforceability of these agreements is currently pending in New Hampshire state court.

10

Simply, other than the *pro forma* claim that the $75,000 amount in controversy is met, the Complaint contains no allegations of injury, damages, or losses.  The allegations in the Complaint are inadequate as a matter of law. Without presenting any calculations as to the amount of loss resulting from D&M Inc.'s alleged misconduct, Plaintiff has failed to meet its burden.

### 2. PLAINTIFF HAS NOT ESTABLISHED INDIVIDUAL LIABILITY ON THE PART OF MR. POWERS

A tortious interference claim cannot be maintained against a corporate agent, office, or employee acting within the scope of his employment. *See Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1099 (Fla. 1st DCA 1999) (rejecting tortious interference claim against corporate officer because "corporate entities" must "act through individuals."). To establish an individual claim for tortious interference against a corporate officer, plaintiff must assert that the officer acted outside of the furtherance of the business. *See SIG, Inc. v. AT&T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1199 (S.D. Fla. 2013) ("an agent of a corporate party to the business relationship cannot be held liable for tortious interference if he was acting within his capacity and scope as an agent of the corporation"); *Intercarga Internacional De Carga, S.A. v. Harper Group, Inc.*, 659 So. 2d 1208, 1210 (Fla. 3d DCA 1995); *see also In re Green Field Energy Services, Inc.*, 834 Fed. Appx. 695 (3rd Cir. 2020) ("Normally, an officer of a corporation is not liable for tortious interference merely because he or she makes decisions that lead the corporation to a contractual breach. Rather, liability attaches where the officer acts for "personal gain, as distinguished from gain for the corporation."). A corporate office cannot be held individually liable for tortious interference absent individual intent or a piecing of the corporate veil. *Ryan v. Wren*, 413 So.2d 1223, 1224 (Fla. 2d DCA 1982); *Frohnhoefer v. Pontin*, 958 So.2d 420, 422 (Fla. Dist. Ct. App. 2007) ("None of the allegations rise to the level that would remove the corporate shield protection.").

11

The mere fact that Mr. Powers, on behalf of his company, was involved in the hiring of the employees is simply insufficient to permit a tortuous interference cause of action to go forward against him.  There is no allegation and no basis to claim that any such actions by Mr. Powers were outside of his scope as the President and CEO of D&M, Inc. and were done for any non-corporate benefit. As such, there is no basis for the induvial claim against Mr. Powers, and the Complaint should be entirely dismissed as to Mr. Powers.

## CONCLUSION

Based on the foregoing arguments and case law, Plaintiff has failed to state cognizable causes of action against Defendants.  As demonstrated, the Complaint lacks the necessary factual allegations to make Plaintiff's claims plausible under the applicable standards.  Accordingly, Defendants respectfully requests that Plaintiff's Complaint be dismissed with prejudice. Alternatively, should the Complaint not be dismissed in its entirety, Mr. Powers should be dismissed as he is not a proper party to this suit.

## LOCAL RULE 3.1(G) CERTIFICATION

The undersigned counsel hereby certifies that because this is a motion to dismiss a complaint, pursuant to Local Rule 3.1(g), a pre-filing conference was not required.

Dated: February 25, 2021

[SIGNATURE ON SUBSEQUENT PAGE]

Respectfully submitted,

**s/Ryan L. Erdreich**
Ryan L. Erdreich, Esq. (Florida Bar No.: 65712)
rerdreich@pisciotti.com
PISCIOTTI LALLIS ERDREICH
30 Columbia Turnpike, Suite 205
Florham Park, New Jersey 07932
Telephone:  (973) 245-8100
Facsimile:   (973) 245-8101

*Attorneys for Defendants*

13

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 25, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system and a copy of the foregoing was served by the CM/ECF system upon all counsel and parties of record on the Service List below.

**s/Ryan L. Erdreich**
Ryan L. Erdreich, Esq. (Florida Bar No.: 65712)
rerdreich@pisciotti.com

**SERVICE LIST**

**JACKSON LEWIS P.C.**
LAURA E. PRATHER, B.C.S.
Florida Bar No.: 870854
laura.prather@jacksonlewis.com
Wells Fargo Center
100 South Ashley Drive, Suite 2200
Tampa, Florida 33602
Telephone: (813) 512-3210
Facsimile: (813) 512-3211

Kyle B. Russell
Kansas Bar No.: 20457
*Motion for Pro Hac Vice to be Filed*
kyle.Russell@jacksonlewis.com
7101 College Blvd., Suite 1200
Overland Park, KS 66210
(913) 982-5755

*Attorneys for Plaintiff*